**VILLAGE OF LAKEWAY, Appellant,**

v.

**LAKEWAY MUNICIPAL UTILITY DISTRICT NO. 1, Appellee.**

No. 13613.

Court of Appeals of Texas, Austin.

Sept. 7, 1983.

Rehearing Denied Oct. 5, 1983.

Doren R. Eskew, Eskew, Muir & Bednar, Austin, for appellant.

Mike Willatt, Austin, for appellee.

Before SHANNON, EARL W. SMITH and BRADY, JJ.

SHANNON, Justice.

The Village of Lakeway seeks to set aside a summary judgment rendered by the district court of Travis County in a suit questioning the validity of a number of Lakeway's ordinances regulating rates for water supplied by Lakeway Municipal Utility District No. 1 to customers in the village. The judgment declared the ordinances void and unenforceable and further prohibited Lakeway and its agents from enforcing the ordinances. This Court will affirm the summary judgment.

Lakeway Municipal Utility District No. 1 is a water district established in 1972 which serves an area in northwest Travis County. The district purchases water taken from Lake Travis pursuant to a contract with the Lower Colorado River Authority.

In 1972, the district began serving water to customers in an area outside, but contiguous to, its boundaries. A part of the area

so served by the district was incorporated in 1974 as the Village of Lakeway. Since incorporation, Lakeway has not undertaken to provide water to its residents, but instead the district has continued to supply water to Lakeway's residents.

Beginning in 1978, Lakeway's board of commissioners passed a series of ordinances which, in general, prohibited any seller of potable water from charging rates to its residents in excess of those rates set out in the ordinance. Other ordinances prohibited disconnection of a customer's service who refused to pay fees or charges in excess of those authorized by the ordinances. A violation of the ordinances was made a misdemeanor offense. In the summer of 1981, Lakeway sought to enforce its ordinances by filing numerous criminal complaints charging the district's employees and directors with violations of its rate ordinances.

The district then filed this declaratory judgment suit. The district, thereafter, filed a motion for summary judgment. After hearing, the court rendered summary judgment declaring the ordinances void and unenforceable as to the furnishing of water service by the district to residents of Lakeway. The court also rendered judgment prohibiting the Village and its agents from enforcing the ordinances against the district or its employees.

Lakeway attacks the judgment by two points of error, the first being that the trial court "exceeded its jurisdiction by enjoining the enforcement of a criminal law [the ordinances] which was not absolutely void and which did not result in any irreparable injury to any vested property right." By its second point, Lakeway claims, generally, that the district court "erred in granting [the district's] motion for summary judgment."

In support of its primary argument for reversal, Lakeway relies upon the rule that a court of equity has no authority to enjoin the enforcement of a penal ordinance, absent a showing that the ordinance is void and that its enforcement would cause irreparable injury to vested property. *City of Richardson v. Kaplan*, 438 S.W.2d 366 (Tex. 1969); *City of Fort Worth v. Craik*, 411 S.W.2d 541 (Tex.1967); *City of Hutchins v. Jenkins*, 628 S.W.2d 492 (Tex.App.1982, no writ).[1]

The district agrees with Lakeway's statement of the rule. In defense of the judgment, however, the district urges that the ordinances are void because Lakeway, as a general law city, has no authority to review or modify the water rates the district charges its customers, nor does Lakeway have authority to interfere with discontinuance of service for non-payment of accounts. This is so, claims the district, because a general law city has only those powers conferred upon it by statute, and there exists no statute which purports to grant a general law city the power to regulate retail water rates.

In response, Lakeway insists that Tex.Rev.Civ.Stat.Ann. art. 1015, subdivision 30 (1963) confers upon it, as a general law city, the power to set water rates. Article 1015, subdivision 30 provides, in part, that general law cities have the power:

[t]o provide, or cause to be provided, the city with water; to make, regulate and establish public wells, pumps and cisterns, hydrants and reservoirs in the streets or elsewhere within said city or beyond the limits thereof, for the extinguishment of fires and the convenience of the inhabitants, and to prevent the unnecessary waste of water.

Lakeway's argument was advanced and rejected long ago in *Ball v. Texarkana Water Corporation*, 127 S.W. 1068 (Tex.Civ. App.1910, no writ). In *Ball*, the Court expressly held that the predecessor statute to art. 1015, subdivision 30, *did not* empower a

---

1. In the posture of this appeal, the question for decision is narrowed to a determination of the power of the village to pass the ordinances regulating the district's water rates. This Court is not called on to determine, and does not determine, to which agency, the Public Utility Commission or the Texas Water Commission, the dissatisfied Lakeway customers could have taken their complaint concerning the district's water rates.

general law city to regulate water rates charged its residents by a water company.

■ Lakeway also claims that Tex.Rev. Civ.Stat.Ann. art. 1146, subdivision 2 (1963) is authority for the ordinances under consideration. Article 1146, subdivision 2 provides that aldermen shall "[h]ave and exercise exclusive control over the streets, alleys and other public places within the corporate limits...." Article 1146, subdivision 2, by its terms, does not purport to empower general law cities to set water rates, and Lakeway has not directed the attention of this Court to any authority so holding, nor have we found any. We have concluded that the claim is not meritorious.

Finally, Lakeway suggests that the Public Utility Regulatory Act, Tex.Rev.Civ. Stat.Ann. art. 1446c §§ 17(a) and 22 (1980), authorize its regulation of the district's rates. In general, § 17(a) provides, "*[s]ubject to the limitations imposed in this Act*," the governing body of a municipality has original jurisdiction over all electric, water, and sewer utility rates, operations, and services provided by such a utility within the limits of the municipality. (emphasis added) Section 22, in the main, speaks to a continuation by the municipality of regulation of utility service until such time as the Public Utility Commission assumes jurisdiction over the utility.

Except for purposes of Article VII, article 1446c excludes regulation of political subdivisions providing retail water service by defining the terms "public utility" and "utility" in § 3(c)(4), regarding the sale of water and sewer service, to exclude "equipment or facilities owned and operated for either purpose by a ... *political subdivision* of this state...." (emphasis added).

■ To circumvent application of art. 1446c § 3(c)(4) and by way of collateral attack, Lakeway questions the creation and governmental nature of the district, claiming the district is "not a governmental agency of the state but [is] the contrivance for private gain of a private land promoter who conspired with seven of his employees to create the image of a 'public' agency through fraudulent transactions forbidden by [law]." This Court observes, in this connection, that the existence of the district and its right to act can be questioned only in a direct proceeding in the nature of quo warranto filed by or on behalf of the State. *Walling v. North Central Texas Mun. Water Authority*, 348 S.W.2d 532 (Tex. 1961); *Fritter v. Wesh*, 65 S.W.2d 414 (Tex. Civ.App.1933, writ ref'd). In our opinion, the trial court concluded correctly that the district, as a "political subdivision" and a governmental agency created by the Texas Water Rights Commission, is excluded from operation of §§ 17(a) and 22.

■ Having determined that Lakeway was without authority to regulate the district's rates, it is necessary for this Court to ascertain whether the district demonstrated irreparable harm to its vested property rights by operation of the village's ordinances. We have concluded that it did. The district's summary judgment proof shows the rates charged by the district and the rates established by the ordinances. The "property right" involved is the right to charge and collect rates for water sold to customers residing within the village. The district's irreparable harm consisted of that part of the rate that the district was precluded from collecting by reason of Lakeway's enforcement of its ordinances.

The judgment is affirmed.